**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Elif Akcayli*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIF AKCAYLI, derivatively on behalf of SONDER HOLDINGS INC., | Case No. |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| FRANCIS DAVIDSON, SEAN AGGARWAL, CHRIS BERRY, SANJAY BANKER, DOMINIQUE BOURGAULT, FRITS DIRK VAN PAASSCHEN, MICHELLE FRYMIRE, NABEEL HYATT, GILDA PEREZ-ALVARDO, and JANICE SEARS, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants, | |
| and | |
| SONDER HOLDINGS, INC., | |
| Nominal Defendant. | |

1

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Elif Akcayli ("Plaintiff"), by and through the undersigned counsel, derivatively on behalf of Nominal Defendant Sonder Holdings Inc. ("Sonder" or the "Company"), brings this Verified Shareholder Derivative Complaint against Francis Davidson, Sean Aggarwal, Chris Berry, Sanjay Banker, Dominique Bourgault, Frits Dirk van Paasschen, Michelle Frymire, Nabeel Hyatt, Gilda Perez-Alvarado, and Janic Sears (collectively, the "Individual Defendants" and, together with Sonder, "Defendants") for, and among other things, breaches of fiduciary duties and violations of the federal securities laws.

Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on a review of publicly available information, filings by Sonder with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought against certain officers and members of Sonder's Board of Directors (the "Board") to remedy wrongdoing committed by the Individual Defendants from March 16, 2023 through March 15, 2024, both dates inclusive (the "Relevant Period").

2.      Sonder is a hospitality company that works with real estate owners to lease and operate living accommodations, such as fully equipped apartments and hotel rooms. As of December 31, 2022, Sonder had approximately 9,700 units available throughout 44 cities in 10 countries.

3.      Sonder aims to combine tech-enabled service and accommodations into a single, seamless experience. Guests can book decorated and furnished

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

properties online either directly, through the Sonder's app or website, or indirectly, through third-party sites such as Airbnb and Expedia.

4.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make a series of materially false and misleading statements regarding the accuracy of the Company's financial reports, material changes in the Company's internal reports, and disclosures of fraud. Specifically, the Individual Defendants failed to disclose that Sonder had improperly accounted for, *inter alia*, the valuation and impairment of its operating lease right of use ("ROU") assets. As a result, the Company's statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

5.      On March 15, 2024, Sonder issued a press release revealing that the financial statements it had released over the previous year, namely the 2022 10-K and all quarterly reports for the fiscal year ("FY") ended December 31, 2023 (the "2023 FY") could no longer be relied upon as the result of "accounting errors related to the valuation and impairment of operating lease ROU assets and related items." The press release revealed that Sonder "expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods."

6.      That same day, Sonder filed a Notification of Late Filing on Form 12b-25, stating that the pending Form 10-K for the 2023 FY would be delayed.

7.      On this news, the price of Sonder's stock fell $2.10 per share, or approximately 38.2%, from a close of $5.50 per share on March 17, 2024 to close at $3.40 per share on March 18, 2024.

8.      Sonder and Defendants Davidson, Berry, and Bourgault are named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Central District of California, captioned *Park v. Sonder Holdings Inc., et al.*, 2:24-cv-04798-ODW (C.D. Cal.) (the "Securities Class

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Action"). The Securities Class Action has further subjected Sonder to losses from the waste of corporate assets and the unjust enrichment of the Individual Defendants, as well as the need to undertake internal investigations and implement adequate internal controls.

9.     The Individual Defendants are not disinterested and/or independent directors. A majority of the Company's Board cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, the collective engagement in fraud and misconduct by the Company's directors, the substantial likelihood of the directors' liability in this derivative action  liability, and the substantial likelihood of liability of the Individual Defendants named in the Securities Class Action.

10.     Sonder has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)(1)) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC. §1367(a).

13.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

4

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 as Sonder's principal executive offices are located in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have conducted business and engaged in numerous activities that have had an effect in this District.

## PARTIES

15.     Plaintiff is a current shareholder of Sonder and has continuously held Sonder stock at all relevant times.

16.     Nominal Defendant Sonder is a Delaware corporation with its headquarters at 447 Sutter St., Suite 405, #542, San Francisco, California 94108. Sonder's common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "SOND."

17.     Defendant Davidson ("Davidson") has served as the Chief Executive Officer ("CEO") and as a Company director since founding Sonder in January 2014. He also served as the Chair of the Company's Board until December 2024. According to the proxy statement filed on Schedule 14A with the SEC on November 8, 2024 (the "2024 Proxy Statement"), Defendant Davidson received $1,559,990 in total compensation from the Company for the 2023 FY and as of November 1, 2024, beneficially owned 1,628,678 shares of the Company's common stock, representing 12.9% of the Company's total outstanding common stock.

18.     Defendant Sean Aggarwal ("Aggarwal") has served as a Company director since 2022. He is Chair of the Nominating, Corporate Governance, and Social Responsibility Committee and a member of the Compensation Committee.

19.     Defendant Chris Berry ("Berry") served as the Company's Senior Vice President and Chief Accounting Officer from August 2022 until August 2023.

20.     Defendant Sanjay Banker ("Banker") has served as a Company director since January 2023. He is a member of the Investment Committee. He

served as the Company's CFO from January 2019 until December 2022. According to the 2024 Proxy Statement, as of November 1, 2024, Defendant Banker beneficially owned 221,724 total shares of the Company's common stock, which accounted for 1.9% of the Company's total common stock.

21.    Defendant Dominique Bourgault ("Bourgault") served as the Company's CFO from March 2023 until December 2024. According to the 2024 Proxy Statement, Defendant Bourgault received $1,730,978 in total compensation for the 2023 FY.

22.    Defendant Frits Dirk van Paasschen ("van Paasschen") has served as a Company director since 2020. He is a member of the Audit Committee and the Investment Committee.

23.    Defendant Michelle Frymire ("Frymire") has served as a Company director since 2022. She is Chair of the Investment Committee and as a member of the Nominating, Corporate Governance, and Social Responsibility Committee. During the Relevant Period, Defendant Frymire served on the Audit Committee.

24.    Defendant Nabeel Hyatt ("Hyatt") served as a Company director from 2016 until December 2024.

25.    Defendant Gilda Perez-Alvarado ("Perez-Alvarado") served as a Company director from 2021 until October 2023.

26.    Defendant Janice Sears ("Sears") has served as a Company director since 2021 and as the Chairperson of the Board since January 2025. She is Chair of the Audit Committee and a member of the Compensation Committee. Previously, she served as the Lead Independent Director.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

27.    By reason of their positions as officers, directors, and/or fiduciaries of Sonder and because of their ability to control the business and corporate affairs of Sonder, the Individual Defendants owed the Company and its shareholders the

fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

28. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

29. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with the Company, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

30. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

(a)     ensure that the Company complied with its legal obligations and requirements including acting only within the scope of federal, state, and local laws, and rules and regulations;

(b)     conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     ensure the Company was operated in a diligent, honest, and prudence manner in compliance with all applicable federal, state and local laws, and rules and regulations;

(f)     ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

31.     As officers and/or directors of a publicly traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to Sonder's financial condition and statements, performance, growth, operations,

8

present and future business, products, management, earnings, and internal controls. The Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all facts so that the market price of Sonder's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

32.    Each of the Individual Defendants owed to Sonder and its shareholders the duty of loyalty requiring that each favor Sonder's interest and that of its shareholders over their own while conducting the affairs of the Company to refrain for using their position, influence, or knowledge to gain personal advantage.

33.    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.    At all relevant times, the Individual Defendants were the agents of each other and of Sonder and were acting within the course and scope of their agency.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

35.    In committing the wrongful acts alleged herein, the Individual Defendants have engaged in, or aligned themselves with, a common course of conduct, acting in concert and conspiring with one another to further their misconduct. They caused the Company to conceal the true facts as outlined in this complaint. Additionally, the Individual Defendants aided, abetted, and/or assisted each other in breaching their respective duties.

36.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to (1) enable and conceal the

Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment, waste if corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (2) conceal adverse information concerning Sonder's operations, financial condition, legal compliance, future business prospects, and internal controls; and (3) artificially inflate Sonder's stock price.

37.    The Individual Defendants carried out their conspiracy, common enterprise, and/or coordinated actions by causing the Company to deliberately, recklessly, or negligently conceal material facts, fail to correct those misrepresentations, and violate applicable laws.

38.    To advance this plan, conspiracy, and course of conduct, the Individual Defendants, both collectively and individually, carried out the actions described herein. As these actions were executed under the Board's authority, each of the Individual Defendants, being directors of Sonder, was a direct, essential, and significant participant in the conspiracy, joint enterprise, and/or coordinated conduct alleged in this complaint.

39.    Each of the Individual Defendants aided, abetted, and provided substantial assistance in the wrongdoings described herein. In providing such assistance, each Individual Defendant acted with actual or constructive knowledge of the primary misconduct, either directly participated in or significantly contributed to the commission of that wrongdoing, and was, or should have been, aware of their overall role in furthering the misconduct.

40.    At all relevant times, each of the Individual Defendants acted as an agent of the other Defendants and of Sonder, and at all times operated within the course and scope of that agency.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## CODE OF BUSINESS CONDUCT AND ETHICS

41.    Sonder's Code of Business Conduct and Ethics (the "Code of Conduct") states that it was "specifically written for Sonder's employees, officers and directors" and "applies to all individuals working for Sonder, working at Sonder, or representing Sonder." It further represents that Sonder is "committed to building a healthy, ethical, and compliant company."

42.    In a section titled "Act Ethically and Honestly," the Code of Conduct states:

> As a Sonder employee, you're expected to complete your work efficiently, responsibly, and in an acceptable manner. All information you provide during or related to your employment should be complete and accurate to the best of your knowledge. Maintaining the accuracy of our reporting and recordkeeping is a responsibility we all share, and all of our transactions must be correct and properly recorded. See "Do the Right Thing - Act with Honesty and Integrity - Accurate Books, Records and Reports" for more information on the importance of honesty and accuracy in Sonder's financial reporting.

> Dishonesty, deceit, or theft will not be tolerated, including embezzlement, falsifying company documents, and accepting kickbacks in any form. This also includes abusing employment benefits like time off, insurance, facilities, discounts, or other benefits Sonder offers.

43.    In a section titled "Maintain Confidentiality," the Code of Conduct states, in relevant part:

> Confidential information and intellectual property represent the outcome of significant company investment and years of hard work. In carrying out Sonder's business, you may learn confidential or proprietary information about Sonder, as well as its customers, suppliers and/or business partners. Confidential information of Sonder and other companies may not be shared with a third party without a legitimate business reason and proper authorization, and you must use good judgment when determining what confidential information may be shared internally, and with whom.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

When in receipt of confidential information of a third party, you must always abide by any confidentiality and/or use restrictions imposed by the disclosing party, and limit dissemination of the confidential information both inside and outside the Company to people who need to know the information for business purposes and who are bound by similar obligations of confidentiality, unless disclosure is authorized or legally mandated. Your obligation to protect the confidential information of Sonder and of individuals and companies with which we do business continues even if your employment with Sonder ends.

You are responsible for understanding and complying with the law and any signed agreements regarding the possession or distribution of non-public information. Please contact the Compliance Officer if you have any questions about whether information is confidential.

44.     In a section titled "Act with Honesty and Integrity – Accurate Books, Records, and Reports," the Code of Conduct states, in relevant part:

We have a responsibility to provide full and accurate information in our public disclosures about our financial condition and results of operations. Sonder's books, records and reports are only as accurate as the data from which they are derived. All employees might, at some point, contribute to the accuracy of information (including financial information) maintained by Sonder or submitted to our regulators.

You are responsible for the accurate and complete reporting of any information (including financial information) within your respective areas. You should never falsify or distort any information or document related to your work at Sonder, including but not limited to: ● expense reports; ● purchase orders; ● benefits claims; ● invoices; ● entries in financial books and records; and ● quality and safety reports.

* * *

Inaccuracies in our financial information may undermine the confidence of our customers, investors, and owners and harm our reputation. Further, inaccurate financial records could result in Sonder failing to satisfy legal, regulatory, or fiduciary obligations and cast doubt on our integrity and honesty. You must:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

a. maintain all of Sonder's books, records, accounts and financial statements in reasonable detail, and reflect the matters to which they relate accurately, fairly and completely;

b. ensure that all books, records, accounts and financial statements conform both to applicable legal requirements and to Sonder's system of internal controls; and

c. carefully and properly account for all of Sonder's assets.

45. In a section titled "Uphold the Law," the Code of Conduct states, in relevant part:

Sonder is committed to complying with the laws of the countries in which we operate. Employees have an obligation to be knowledgeable about the laws, rules, and regulations that apply to their areas of responsibility and the locations where we operate. You must understand and comply with all laws, rules and regulations that apply to your specific role, and are responsible for preventing violations of the law and for speaking up if you see possible violations.

* * *

- Keeping the Audit Committee Informed. The Audit Committee of the Board (the "Audit Committee") plays an important role in ensuring the integrity of the Company's public reports. See below under "Follow our Code - Reporting of Any Illegal or Unethical Behavior" for additional information.

- Maintaining and Managing Records. Sonder is required by local, state, federal, foreign and other applicable laws, rules and regulations to retain certain records and to follow specific guidelines in managing its records. Records include all recorded information, regardless of medium or characteristics. Civil and criminal penalties for failure to comply with such guidelines can be severe for employees, agents, contractors and for Sonder. Additionally, you are required to cooperate with any request made by the Compliance Officer to preserve or produce any Sonder-issued devices, computers, hardware, cell phones and any documents, records, information, or other media on any such Sonder-issued devices, computers, hardware, and cell phones. See above under "Do the Right Thing - Act with Honesty and Integrity - Accurate Books, Records and Reports".

13

46.     In a section titled "Avoid Conflicts of Interest," the Code of Conduct states, in relevant part:

> A "conflict of interest" exists when a person's private interest interferes, or appears to interfere, with Sonder's interests. You should avoid actual or potential conflicts of interest that might adversely affect your judgment, objectivity or loyalty to Sonder. Although you're free to engage in meaningful activities outside of your job, any potential conflict of interest must be disclosed to your manager or HR Business Partner immediately upon discovery of the conflict.

47.     In a section titled "Reporting of Any Illegal or Unethical Behavior," the Code of Conduct states, in relevant part:

> Situations that may involve a violation of ethics, laws or this Code may not always be clear and may require difficult judgment calls. You are encouraged to seek guidance from your manager, the Compliance Officer or Human Resources when in doubt about the best course of action to take in a particular situation. In most instances, you should report any concerns or questions about a violation of laws, rules, regulations or this Code to your supervisors/managers or Sonder's General Counsel or, in the case of accounting, internal accounting controls or auditing matters, the Audit Committee.

> If you know of or suspect a violation of this Code, or of applicable laws and regulations (including complaints or concerns about accounting, internal accounting controls or auditing matters), or if you have concerns about a situation that you believe does not reflect Sonder's culture and values, you must report it immediately to your manager, the Compliance Officer or Human Resources. You may also report concerns anonymously (i) by calling the Company's confidential independent secure reporting hotline at 1-833- 411- 1180 or (ii) by accessing the Company's confidential independent secure web portal at http://sonder.ethicspoint.com.

> * * *

> The Audit Committee plays an important role in ensuring the integrity of Sonder's public reports. If you believe that questionable accounting or auditing conduct or practices have occurred or are occurring, you should notify the Audit Committee. In particular, you should promptly

14

bring to the attention of the Audit Committee any information of which you become aware concerning: ● the accuracy of material disclosures made by Sonder in its public filings; ● material weaknesses or significant deficiencies in internal control over financial reporting; ● any evidence of fraud that involves an employee who has a significant role in the Sonder's financial reporting, disclosures or internal controls or procedures; or ● any evidence of a material violation of the policies in this Code regarding financial reporting.

48.     In a section titled "Waivers and Amendments," the Code of Conduct states, in relevant part:

We reserve the right to amend this Code at any time, for any reason, subject to applicable laws, rules and regulations.

Any amendment or waiver of any provision of this Code must be approved in writing by the Sonder Board of Directors or, if appropriate, its delegate(s), and promptly disclosed pursuant to applicable laws and regulations. Any waiver or modification of this Code for the principal executive officer, principal financial officer, principal accounting officer, controller, or any other persons performing similar functions in the company will be promptly disclosed to stockholders if and as required by applicable law or the rules of the stock exchange on which Sonder's securities are listed.

49.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' breaches of fiduciary duty, gross mismanagement, abuse of control, waste of corporate assets, unjust enrichment, violations of the Exchange Act, and the aiding and abetting thereof. Further, in violation of the Code of Conduct, the Individual Defendants failed to maintain internal controls, failed to obtain waivers and/or failed to disclose obtained waivers of violating the Code of Conduct, and failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Codes of Conduct.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## **AUDIT COMMITTEE CHARTER**

50.      Sonder also maintains a Charter of the Audit Committee of the Board of Directors (the "Audit Committee Charter") which governs the Audit Committee's roles and responsibilities. With respect to the purpose of the Audit Committee, the Audit Committee Charter states:

> The purpose of the Committee shall be to assist the Board in its oversight of: 1. the quality and integrity of the accounting and financial reporting processes and internal controls of the Company; 2. the Company's financial statement audits and the integrity of the Company's financial statements; 3. the Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements) applicable to the financial statement and accounting and financial reporting processes; 4. the Company's compliance with ethical standards adopted by the Company; 5. the Company's systems of disclosure controls and procedures; 6. the qualifications, independence and performance of the Company's independent auditors; 7. the implementation and performance of the Company's internal audit function; 8. disclosures related to environmental, social and governance ("ESG") matters; and 9. the Company's enterprise-wide risk assessment, focusing on material risks.

51.      In a section titled "Responsibilities," under the subheading "Appoint and Oversee Independent Auditor; Approve Audit and Non-Audit Services," the Audit Committee Charter states, in relevant part:

> The Committee will be directly responsible for appointing, compensating, retaining, evaluating and overseeing an independent registered public accounting firm to act as the Company's independent auditor for the purpose of auditing the Company's financial statements, books, records, accounts and internal control over financial reporting, and, where appropriate, replacing the independent auditor. The Committee shall also appoint, retain, compensate, oversee and, where appropriate, replace any other registered public accounting firm engaged for the purpose of preparing or issuing an audit report or performing other audit, review or attest services for the Company.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Each such independent registered public accounting firm shall report directly to the Committee.

52.    In the same section, under the subheading "Review of Internal Controls and Integrity of Financial Statements," the Audit Committee Charter states, in relevant part:

The Committee shall meet with management, the internal audit department, if applicable, and the Company's independent auditor to review and discuss the Company's internal controls and the integrity of the Company's audited financial statements. Included in this process shall be review of:

a. the scope and timing of the annual audit of the Company's financial statements;

b. the Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Form 10-K and Form 10- Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations"; the Committee shall make a recommendation to the Board as to whether the audited financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations" should be included in the Company's Form 10-K for filing with the SEC;

c. the results of the independent audit and the quarterly reviews, and the independent auditor's opinion on the audited financial statements;

d. the quality and adequacy of the Company's internal controls, and discussion with management and the independent auditor with regard to any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls;

e. the Company's disclosure controls and procedures, as well as the quarterly assessments of such controls and procedures by the Chief Executive Officer and Chief Financial Officer;

f. any major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls

17

and any special audit steps adopted in light of material control deficiencies;

g. any analyses prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and

h. any audit problems or difficulties the independent auditor encountered in the course of its audit work, including any restrictions on the scope of the independent auditor's activities or on access to requested information, and any significant disagreements with management.

53.    In the same section, under the subheading Internal Audit Function," the Audit Committee Charter states:

The Committee shall, as applicable, oversee the design, implementation and performance of the Company's internal audit function, including by:

a. reviewing and approving the charter of the Company's internal audit function and any amendments;

b. reviewing the responsibilities, functions, qualifications, budget, performance, objectivity, and the scope and results of internal audits;

c. reviewing and approving the annual plan and scope of work of the Company's internal audit function, including its responsibilities and staffing;

d. approving the hiring, promotion, demotion or termination of the person in charge of the Company's internal audit function;

e. reviewing the results of the internal audit program, including significant issues in internal audit reports and responses by management; and

f. monitoring that the Company maintains an effective internal audit function and overseeing the internal auditors (or other personnel responsible for the Internal Audit function)[, who will report directly to the Committee].

18

54.    In violation of the Audit Committee Charter, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, gross mismanagement, abuse of control, waste of corporate assets, and violations of the Exchange Act. Moreover, in violation of the Audit Committee Charter, the Individual Defendants failed to maintain the accuracy of the Company records and reports, comply with laws and regulations, act in good faith and diligence without misstating, misrepresenting, or omitting material facts, and properly report violations of the Audit Committee Charter.

## SUBSTANTIVE ALLEGATIONS

### *Background*

55.    Two Generally Accepted Accounting Principles ("GAAP") apply to Sonders' business: (1) the Accounting Standards Codification ("ASC") 842 and (2) ASC 360.

56.    ASC 842 requires lessees to recognize all leases, with certain exceptions, on its balance sheets, eliminating real estate-specific provisions and modifying certain aspects of a lessor's accounting. In essence, ASC 842 eliminates the classification of leases as either operating leases or finance leases and requires lessees to recognize a ROU asset and lease liability on virtually all lease contracts. This can provide investors with a more accurate picture of a company's leasing activities and obligations.

57.    ASC 360 provides guidelines on how to account for long-lived assets such as buildings, equipment, and land. It further governs how businesses should account for acquisitions, depreciation, impairment, and disposal of these assets.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

According to ASC 360, impairment occurs when the current fair market value of an asset is different from its carrying value.

58.    Both ASC 842 and ASC 260 are simple to understand, interpret, and apply, especially for accounting professionals.

### *False and Misleading Statements*

59.    On March 16, 2023, Sonder filed its 2022 10-K with the SEC, announcing its financial results for the fourth quarter and full 2022 FY. The 2022 10-K was signed by Defendants Davidson, Aggarwal, Berry, Banker, van Paasschen, Frymire, Hyatt, Perez-Alvarado, and Sears. It further attached certifications pursuant to Rules 13a-14(a) and 15(d)-14(a) of the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") that were signed by Defendants Davidson and Berry attesting to the accuracy of the 2022 10-K and stating that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report."

60.    The 2022 10-K included Sonder's consolidated balance sheets for the 2021 FY and 2022 FY. The operating lease right-of-use ("ROU") assets for the 2021 FY are not listed in the 2022 10-K. For the 2022 FY, the 2022 10-K lists the operating lease ROU assets at $1,209,486,000. Specifically, the balance sheet shows the following assets, in thousands:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | 2022 | 2021 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash | $ 246,624 | $ 69,726 |
| Restricted cash | 42,562 | 215 |
| counts receivable, net of allowance of $972 and $4,127 at December 31, 2022 and 2021, respectively | 5,613 | 4,638 |
| Prepaid rent | — | 2,957 |
| Prepaid expenses | 8,066 | 5,029 |
| Other current assets | 10,065 | 16,416 |
| Total current assets | 312,930 | 98,981 |
| Property and equipment, net | 34,926 | 27,461 |
| Operating lease right-of-use ("ROU") assets | 1,209,486 | — |
| Other non-current assets | 16,270 | 22,037 |
| Total assets | $ 1,573,612 | $ 148,479 |

61.    A note in the 2022 10-K broke down how the Company accounted for its lease, stating:

> Operating lease ROU assets are included within operating lease right-of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non- current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

> The adoption of ASC 842 had a material impact on the Company's consolidated financial statements. On January 1, 2022, the Company recognized $1.0 billion in operating lease ROU assets, $1.1 billion of operating lease liabilities, and a $66.1 million reduction to deferred rent, which was recorded as a reduction to the ROU asset measured on the adoption date. The standard did not materially impact the Company's consolidated statement of operations and comprehensive loss or consolidated statement of cash flows.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Lease expense for fixed operating lease payments is recognized on a straight- line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

62.    The note then broke down the components of Sonder's operating leases, with the tables showing, in thousands, the following:

| | Year ended December 31, 2022 |
|---|---|
| Operating lease cost | $ 268,810 |
| Short-term lease cost | 3,203 |
| Variable lease cost | (2,582) |
| Total operating lease cost | $ 269,431 |

Supplemental information related to operating leases was as follows (in thousands):

| | Year ended December 31, 2022 |
|---|---|
| Cash payments for operating leases | $ 218,434 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ 356,157 |

63.    The 2022 10-K report did not report any impairment changes.

64.    The 2022 10-K addressed Sonder's internal controls and material weakness, stating:

Notwithstanding the identified material weaknesses, management, including our Principal Executive Officer and Principal Financial Officer, ***believes the consolidated financial statements included in this Annual Report on Form 10-K fairly represent in all material respects our financial condition, results of operations, and cash***

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

*flows at and for the periods presented in accordance with U.S. GAAP.[1]*

<u>Leases</u>

We previously identified a material weakness in our internal control over financial reporting related to the process to capture and record lease agreements timely and accurately. ***Management has concluded that this material weakness in internal control over financial reporting is due to the fact that the Company did not have the adequate resources with the appropriate level of experience and technical expertise to oversee the Company's leasing business processes and related internal controls.***

65.    With respect to changes in internal controls over financial reporting, the 2022 10-K stated that "[o]ther than as discussed above, during the period covered by this report, there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

66.    On April 19, 2023, Sonder filed the 2023 Proxy Statement with the SEC, which was solicited by Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears and filed pursuant to Section 14(a) of the Exchange Act.

67.    The 2023 Proxy Statement called for Sonder shareholders to vote to, *inter alia,* (1) re-elect Defendants Perez-Alvarado and Frymire to the Board for a three-year term; and (2) ratify the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the 2023 FY.

68.    With respect to Sonder's Code of Conduct, the 2023 Proxy Statement stated:

The Board has adopted a Code of Business Conduct and Ethics that applies to all employees and directors, including our principal executive officer, principal financial officer, principal accounting officer, other executive officers, and other senior financial personnel.

---

[1] All emphasis added unless otherwise noted.

A copy of our Code of Business Conduct and Ethics is available in the
Investor Relations section of our website at investors.sonder.com
under "Corporate Governance—Document & Charters—Governance
Documents." Information on or accessible through our website is not
incorporated by reference in this Proxy Statement. If we make any
substantive amendment to a provision of our Code of Business
Conduct and Ethics that applies to, or grant any waiver from a
provision of our Code of Business Conduct and Ethics to, our principal
executive officer, principal financial officer, principal accounting
officer or controller, or persons performing similar functions, we will
promptly disclose the date and nature of the amendment or waiver
(including the name of the person to whom the waiver was granted) on
our website in accordance with the requirements of Item 5.05 of Form
8-K.

69.    Regarding the "Role of the Board in Risk Oversight," the 2023 Proxy
Statement stated, in relevant part:

Risk is inherent in every business, and we face a number of risks,
including strategic, financial, business and operational, legal and
compliance and reputational. We have designed and implemented
processes to manage risk in our operations. Management is responsible
for the day-to-day management of risks the Company faces, while one
of the Board's key functions is informed oversight of the Company's
risk management process.

The Board believes that its current leadership structure facilitates its
risk oversight responsibilities. The Board does not have a standing
risk management committee, but rather administers this oversight
function directly through the Board as a whole, as well as through the
various standing Board committees that address risks inherent in their
respective areas of oversight. For example, the Board acts as the
ultimate decision-making body of the Company and advises and
oversees management, who are responsible for the day-to-day
operations and management of the Company. The Board believes the
majority-independent Board and independent Board committees
provide a well-functioning and effective balance to an experienced
Chairperson. The Audit Committee oversees the Company's
accounting and financial reporting processes, including our systems of
disclosure controls and procedures and internal control over financial

reporting, the performance of our internal audit function, and financial statement audits, monitors compliance with legal and regulatory requirements, and reviews the Company's policies and practices with respect to risk assessment and risk management. The Governance Committee monitors the effectiveness of, and oversees compliance with, our corporate governance guidelines and policies and assesses the overall operation and functioning of the Board and its committees. The Compensation Committee assesses and monitors whether any of our compensation programs, policies and practices has the potential to encourage excessive risk-taking.

70.     Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears caused the 2023 Proxy Statement to be false and misleading by failing to disclose, *inter alia,* that Defendants knew and/or recklessly disregarded that Sonder had improperly accounted for the valuation and impairment of its operating lease ROU assets in its financial statements issued during the Relevant Period. As a result, the Company's statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

71.     The 2023 Proxy Statement was also false and misleading because Sonder's Code of Conduct and Audit Committee Charter were not followed. This is evidenced by (1) the Individual Defendants making and/or causing the Company to make the false and misleading statements and omissions alleged herein; (2) the Individual Defendants failing to report violations of the Code of Conduct; and (3) the Board not adequately performing its risk oversight functions.

72.     As a result of Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears causing the 2023 Proxy Statement to be false and misleading, Sonder shareholders voted, *inter alia,* to  (1) re-elect Defendants Perez-Alvarado and Frymire to the Board for a three-year term; and (2) ratify the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the 2023 FY.

73.     On May 10, 2023, Sonder filed its quarterly report on Form 10-Q with the SEC for the first quarter of the 2023 FY (the "1Q23 10-Q"). The 1Q23 10-Q was signed by Defendant Berry and attached SOX certifications signed by Defendants Davidson and Bourgault attesting to its accuracy and stating that "the financial statements, and other financial information included in this report, fairly presents in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report."

74.     The 1Q23 10-Q contained a consolidated balance sheet that shows the value of the Company's operating lease ROU assets as $1,201,007,000 for 1Q23. In full, the balance sheet in the 1Q23 10-Q showed the following assets and liabilities, in thousands:

|  | | March 31, 2023 | | December 31, 2022 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current assets: | | | | |
| Cash and cash equivalents | $ | 217,968 | $ | 246,624 |
| Restricted cash | | 28,436 | | 42,562 |
| Accounts receivable, net of allowance of $1,346 and $972 at March 31, 2023 and December 31, 2022, respectively | | 6,990 | | 5,613 |
| Prepaid expenses | | 5,128 | | 8,066 |
| Other current assets | | 12,708 | | 10,065 |
| Total current assets | | 271,230 | | 312,930 |
| Property and equipment, net | | 35,432 | | 34,926 |
| Operating lease right-of-use ("ROU") assets | | 1,201,007 | | 1,209,486 |
| Other non-current assets | | 13,791 | | 16,270 |
| Total assets | $ | 1,521,460 | $ | 1,573,612 |
| | | | | |
| **Liabilities and stockholders' deficit** | | | | |
| Current liabilities: | | | | |
| Accounts payable | $ | 14,093 | $ | 16,082 |
| Accrued liabilities | | 18,230 | | 20,131 |
| Taxes payable | | 16,497 | | 14,418 |
| Deferred revenue | | 58,424 | | 41,664 |
| Current operating lease liabilities | | 172,422 | | 158,346 |
| Total current liabilities | | 279,666 | | 250,641 |
| Non-current operating lease liabilities | | 1,156,913 | | 1,166,538 |
| Long-term debt, net | | 179,665 | | 172,950 |
| Other non-current liabilities | | 2,043 | | 3,430 |
| Total liabilities | | 1,618,287 | | 1,593,559 |

75.     A note in the 1Q23 10-Q broke down how the Company accounted for its leases, stating:

> Operating lease ROU assets are included within operating lease right-of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.
>
> Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

76.     The note further broke down the components of the Company's operating leases, with tables showing, in thousands:

| | Three months ended March 31, | |
| --- | --- | --- |
| | 2023 | 2022 |
| Operating lease cost | $ 75,259 | $ 62,947 |
| Short-term lease cost | 632 | 2 |
| Variable lease cost | 1,501 | 643 |
| Total operating lease cost | $ 77,392 | $ 63,592 |

Supplemental information related to operating leases was as follows (in thousands):

| | Three months ended March 31, | |
| --- | --- | --- |
| | 2023 | 2022 |
| Cash payments for operating leases | $ 68,215 | $ 49,765 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ 38,527 | $ 114,900 |

77.     Following the table, the 1Q23 10-Q stated that:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Rental expense for operating leases for the three months ended March 31, 2023 and 2022 was $77.4 million and $65.1 million, respectively, of which $76.4 million and $63.6 million, respectively, is recognized in cost of revenues, $0.2 million and $0.7 million respectively, in operations and support, and $0.8 million and $0.8 million, respectively, in general and administrative.

78.    The 1Q23 10-Q did not disclose any impairment changes.

79.    The 1Q23 10-Q addressed the Company's internal controls over leases, stating that "[o]ther than as discussed above, during the period covered by this report, *there has been no change in our internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.*"

80.    On August 9, 2023, Sonder filed its quarterly report on Form 10-Q with the SEC for the second quarter of the 2023 FY (the "2Q23 10-Q"). The 2Q23 10-Q was signed by Defendant Berry and attached SOX certifications signed by Defendants Davidson and Bourgault attesting to its accuracy and stating that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report."

81.    The 2Q23 10-Q contained a consolidated balance sheet that showed the value of the Company's operating lease ROU assets as $1,308,719,000 for the second quarter of the 2023 FY. In full, the balance sheet in 2Q23 10-Q showed the following assets and liabilities, in thousands:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

|  | June 30, 2023 | | December 31, 2022 |
|---|---|---|---|
| **Assets** | | | |
| Current assets: | | | |
| Cash and cash equivalents | $ 177,444 | $ | 246,624 |
| Restricted cash | 42,069 | | 42,562 |
| Accounts receivable, net of allowance of $1,461 and $972 at June 30, 2023 and December 31, 2022, respectively | 14,042 | | 5,613 |
| Prepaid expenses | 8,786 | | 8,066 |
| Other current assets | 11,516 | | 10,065 |
| Total current assets | 253,857 | | 312,930 |
| Property and equipment, net | 31,616 | | 34,926 |
| Operating lease right-of-use ("ROU") assets | 1,308,719 | | 1,209,486 |
| Other non-current assets | 13,667 | | 16,270 |
| Total assets | $ 1,607,859 | $ | 1,573,612 |
| | | | |
| **Liabilities and stockholders' deficit** | | | |
| Current liabilities: | | | |
| Accounts payable | $ 19,878 | $ | 16,082 |
| Accrued liabilities | 18,555 | | 20,131 |
| Taxes payable | 15,476 | | 14,418 |
| Deferred revenue | 59,858 | | 41,664 |
| Current operating lease liabilities | 183,487 | | 158,346 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | |
|---|---|---|
| Total current liabilities | 297,254 | 250,641 |
| Non-current operating lease liabilities | 1,259,207 | 1,166,538 |
| Long-term debt, net | 186,884 | 172,950 |
| Other non-current liabilities | 1,106 | 3,430 |
| Total liabilities | 1,744,451 | 1,593,559 |

82.   A note in the 2Q23 10-Q explained how the Company accounted for its leases, stating:

> Operating lease ROU assets are included within operating lease right-of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

> Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

83.   The note further broke down the components of the Company's operating leases, with the tables showing, in thousands:

| | Three months ended June 30, | | | | Six months ended June 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | 2023 | | 2022 | | 2023 | | 2022 | |
| Operating lease cost | $ | 74,579 | $ | 65,876 | $ | 149,838 | $ | 128,823 |
| Short-term lease cost | | (201) | | 477 | | 431 | | 479 |
| Variable lease cost | | 371 | | 944 | | 1,872 | | 1,587 |
| Total operating lease cost | $ | 74,749 | $ | 67,297 | $ | 152,141 | $ | 130,889 |

Supplemental information related to operating leases was as follows (in thousands):

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | Three months ended June 30, | | | | Six months ended June 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | | 2023 | | 2022 | | 2023 | | 2022 |
| Cash payments for operating leases | $ | 74,958 | $ | 56,838 | $ | 143,173 | $ | 106,603 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ | 148,510 | $ | 11,968 | $ | 187,037 | $ | 126,868 |

84.    Following the table, the 2Q23 10-Q stated that:

Total operating lease cost for the three months ended June 30, 2023 and 2022 was $74.7 million and $67.2 million, respectively, of which $74.3 million and $64.5 million, respectively, is recognized in cost of revenues, $0.2 million and $0.2 million, respectively, in operations and support, and $0.2 million and $1.1 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

Total operating lease cost for the six months ended June 30, 2023 and 2022 was $152.1 million and $130.9 million, respectively, of which $150.6 million and $128.1 million, respectively, is recognized in cost of revenues, $0.4 million and $0.9 million respectively, in operations and support, and $1.1 million and $1.9 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

85.    The 2Q23 10-Q did not disclose any impairment changes.

86.    The 2Q23 10-Q addressed the Company's internal controls over leases, offering the same disclosure as in the 2022 10-K and 1Q23 10-Q.

87.    The 2Q23 10-Q offered the same disclosure as in the 1Q23 10-Q in reporting on changes in internal control over financial reporting.

88.    On November 14, 2023, the Company filed its quarterly report on Form 10-Q with the SEC for the third quarter of the 2023 FY (the "3Q23 10-Q"). The 3Q23 10-Q was signed by Defendant Bourgault and attached SOX certifications signed by Defendants Davidson and Bourgault attesting to its accuracy and stating that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

results of operations and cash flows of the [Company] as of, and for, the periods presented in this report."

89.     The 3Q23 10-Q contained a consolidated balance sheet that showed the value of the Company's operating lease ROU assets as $1,439,572,000 for the 2Q23. In full, the balance sheet in the 3Q23 10-Q showed the following assets and liabilities, in thousands:

| | September 30, 2023 | December 31, 2022 |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 166,045 | $ 246,624 |
| Restricted cash | 41,188 | 42,562 |
| Accounts receivable, net of allowance of $3,265 and $972 at September 30, 2023 and December 31, 2022, respectively | 9,105 | 5,613 |
| Prepaid expenses | 6,388 | 8,066 |
| Other current assets | 10,532 | 10,065 |
| Total current assets | 233,258 | 312,930 |
| Property and equipment, net | 28,462 | 34,926 |
| Operating lease right-of-use ("ROU") assets | 1,439,572 | 1,209,486 |
| Other non-current assets | 15,045 | 16,270 |
| Total assets | $ 1,716,337 | $ 1,573,612 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| Liabilities and stockholders' deficit | | | | |
|---|---|---|---|---|
| Current liabilities: | | | | |
| Accounts payable | $ | 20,514 | $ | 16,082 |
| Accrued liabilities | | 24,694 | | 20,131 |
| Taxes payable | | 15,894 | | 14,418 |
| Deferred revenue | | 67,819 | | 41,664 |
| Current portion of long-term debt | | 1,000 | | — |
| Current operating lease liabilities | | 199,345 | | 158,346 |
| Total current liabilities | | 329,266 | | 250,641 |
| Non-current operating lease liabilities | | 1,382,693 | | 1,166,538 |
| Long-term debt, net | | 196,398 | | 172,950 |
| Other non-current liabilities | | 668 | | 3,430 |
| Total liabilities | | 1,909,025 | | 1,593,559 |

90.    The 3Q23 10-Q included a table with unaudited consolidated cash flow statements, which showed that in the first three quarters of the 2023 FY, Sonder's "operating lease ROU assets and operating lease liabilities, net" revealed a net loss of $105,422,000. In full, the cash flow statement in the 3Q23 10-Q revealed:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | Nine months ended September 30, | | |
|---|---|---|---|---|
| | | 2023 | | 2022 |
| **Cash flows from operating activities:** | | | | |
| Net loss | $ | (196,034) | $ | (108,392) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | | | |
| Depreciation and amortization | | 18,908 | | 17,801 |
| Stock-based compensation | | 25,362 | | 18,139 |
| Amortization of operating lease ROU assets | | 130,192 | | 105,569 |
| Impairment of ROU assets | | 1,087 | | — |
| (Gain) loss on foreign exchange | | (2,445) | | 13,092 |
| Capitalization of paid-in-kind interest on long-term debt | | 20,418 | | 12,544 |
| Amortization of debt issuance costs | | 6 | | 149 |
| Amortization of debt discounts | | 1,274 | | 3,374 |
| Change in fair value of share-settled redemption feature and gain on conversion of convertible notes | | — | | (29,512) |
| Change in fair value of SPAC Warrants | | (674) | | (23,819) |
| Change in fair value of Earn Out Liability | | (2,142) | | (94,299) |
| Other operating activities | | 897 | | 1,362 |
| Changes in: | | | | |
| Accounts receivable, net | | (4,817) | | (1,560) |
| Prepaid expenses | | 1,885 | | (2,543) |
| Other current and non-current assets | | 1,177 | | 10,750 |
| Accounts payable | | 4,433 | | (28,401) |
| Accrued liabilities | | 3,911 | | 2,295 |
| Taxes payable | | 1,706 | | 6,181 |
| Deferred revenue | | 25,651 | | 30,204 |
| Operating lease ROU assets and operating lease liabilities, net | | (105,422) | | (58,493) |
| Other current and non-current liabilities | | 589 | | 1,467 |
| Net cash used in operating activities | | (74,038) | | (124,092) |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

91.    A note in the 3Q23 10-Q explained how the Company accounted for its leases, stating:

> Operating lease ROU assets are included within operating lease right-of-use assets in the consolidated balance sheets. The corresponding operating lease liabilities are included within current operating lease liabilities and non-current operating lease liabilities in the consolidated balance sheets. ROU assets represent the Company's right to use an underlying asset for the lease term and lease liabilities represent the Company's obligation to make lease payments arising from the lease.

> Lease expense for fixed operating lease payments is recognized on a straight-line basis over the lease term. The Company's lease terms may include options to extend or terminate the lease when it is reasonably certain that it will exercise that option.

92.    The note further broke down the components of the Company's operating leases, with the tables showing, in thousands:

| | Three months ended September 30, | | | | Nine months ended September 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | | 2023 | | 2022 | | 2023 | | 2022 |
| Operating lease cost | $ | 85,025 | $ | 61,498 | $ | 234,801 | $ | 191,908 |
| Short-term lease cost | | 343 | | 1,951 | | 780 | | 2,430 |
| Variable lease cost | | 6,356 | | — | | 9,425 | | — |
| Total operating lease cost | $ | 91,724 | $ | 63,449 | $ | 245,006 | $ | 194,338 |

Supplemental information related to operating leases was as follows (in thousands):

| | Three months ended September 30, | | | | Nine months ended September 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | | 2023 | | 2022 | | 2023 | | 2022 |
| Cash payments for operating leases | $ | 73,777 | $ | 64,690 | $ | 216,950 | $ | 171,292 |
| New operating lease ROU assets obtained in exchange for operating lease liabilities | $ | 173,781 | $ | 73,007 | $ | 360,818 | $ | 199,875 |

93.    Following the table, the 3Q23 10-Q stated that:

35

Total operating lease cost for the three months ended September 30, 2023 and 2022 was $91.7 million and $63.4 million, respectively, of which $91.2 million and $62.0 million, respectively, is recognized in cost of revenues, $0.2 million and $0.5 million, respectively, in operations and support, and $0.3 million and $0.9 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

Total operating lease cost for the nine months ended September 30, 2023 and 2022 was $245.0 million and $194.3 million, respectively, of which $243.0 million and $190.1 million, respectively, is recognized in cost of revenues, $0.6 million and $1.4 million respectively, in operations and support, and $1.4 million and $2.8 million, respectively, in general and administrative in the condensed consolidated statements of operations and comprehensive loss.

94. The 3Q23 10-Q identified an impairment cost, stating: "[a]s of September 30, 2023, the Company identified an impairment of its operating lease right of use (ROU) asset and recorded a related impairment charge in the amount of $1.1 million. The impairment charge is included within other operating expenses for the three and nine months ended September 30, 2023 as reported in the condensed consolidated statements of operations."

95. The 3Q23 10-Q addressed the Company's internal controls over leases, offering the same disclosure as in the 2022 10-K, 1Q23 10-Q, and 2Q23 10-Q.

96. The 2Q23 10-Q offered the same disclosure as in the 1Q23 10-Q and 2Q23 10-Q in reporting on changes in internal control over financial reporting.

97. The statements in ¶¶ were materially false and misleading and failed to disclose, *inter alia,* that Defendants knew and/or recklessly disregarded that Sonder had improperly accounted for the valuation and impairment of its operating lease ROU assets in its financial statements issued during the Relevant Period. As a result, the Company's statements about its business, operations, and prospects

36

were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH BEGINS TO EMERGE

98.    Ater market hours on March 15, 2024, Sonders issued a press release on Form 8-K revealing that the Company's audited financial statements in the 2022 10-K and unaudited consolidated financial statements in the 2023 quarterly reports could no longer be relied upon as the result of "accounting errors related to the valuation and impairment of operating lease ROU assets and related items."

99.    The press release further revealed the impact of Sonder's previously identified weaknesses in internal controls, stating:

> The Company has previously identified and reported material weaknesses in internal controls over financial reporting related to the Company's leases, control activities and control environment. During the on-going preparation of the Company's financial statements for the fiscal year ended December 31, 2023, the Company's management identified specific errors in the processes and procedures surrounding the Company's assessment of the valuation and impairment of its ROU lease assets and related items. Upon additional review, the Company's management determined that the valuation of certain ROU lease assets and related items as of and for each of the Non-Reliance Periods had not considered certain relevant impairment indicators and related valuation information impacting the carrying value of such assets and related items, as required by Accounting Standards Codification (ASC) Nos. 842, Leases, and 360, Property, Plant, and Equipment, in addition to related standards and interpretations.

100.    The press release addressed the impact of the impairment charge reported in the 3Q23 10-Q, stating:

> The Company previously recorded an impairment charge in the amount of $1.1 million related to ROU lease assets in its unaudited condensed consolidated financial statements for the three and nine months ended September 30, 2023, but no impairment charges were recorded in the other interim financial statements in the Non-Reliance Periods or in the 2022 Annual Financial Statements. Based on the

Company's review, which is ongoing, the Company expects to record material non-cash impairment charges, and related reductions in ROU lease assets and related items, in certain of the Non-Reliance Periods.

The foregoing ROU lease asset and related item errors are non-cash in nature and will not impact the Company's reported cash balances or statements of cash flows for the Non-Reliance Periods. ***The Company expects that the restatements will increase the Company's overall net loss and loss per share in the impacted periods.***

101.   The press release also discussed Sonder's intent to issue corrected financial statements, and the impact on the Company's pending annual report for the 2023 FY, stating:

The Company intends to restate the Affected Financial Statements to correct the errors discussed above, and consider any other error corrections identified in the course of its review, as soon as practicable. Investors and others should rely on financial information and other disclosures regarding the Non- Reliance Periods only after the Company restates its financial statements for the Non-Reliance Periods.

The Company anticipates that it will not timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "FY 2023 10-K") and will file a notification of late filing on Form 12b-25 with the SEC. The Company does not currently expect that it will file the FY 2023 10-K within the 15-day extension period contemplated by Rule 12b-25(b) under the Securities Exchange Act of 1934, as amended. Accordingly, the Company expects to receive a notice from The Nasdaq Stock Market that it is not in compliance with the timely filing requirement for continued listing under Nasdaq Listing Rule 5250(c)(1).

102.   The press release revealed an anticipated material weakness, stating:

Although the assessment is not yet complete, the Company anticipates that the review will result in one or more material weaknesses in the Company's internal control over financial reporting during the applicable periods, in addition to the Company's previously identified and reported material weaknesses.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

The Company's management and the Audit Committee have discussed the foregoing matters with the Company's independent registered public accounting firm, Deloitte & Touche LLP.

103.    The press release revealed the anticipated negative effect the restatement would have on the Company's debt, stating:

*The Company's restatement and the related items discussed in this Form 8- K could have an adverse effect upon the Company's debt, including under the Loan and Security Agreement dated as of December 21, 2022, as amended, with Silicon Valley Bank, a division of First Citizens Bank & Trust Company, and the Note and Warrant Purchase Agreement dated as of December 10, 2021, as amended, with certain private placement investors.* The Company is engaging in discussions with its lenders to seek waivers of any noncompliance under the terms of its debt resulting from the accounting errors and to permit the late filing of the FY 2023 10-K. *If such waivers are not obtained, any such noncompliance may entitle our lenders to terminate any existing commitments to lend, impose increased interest rates, accelerate our outstanding debt obligations, initiate foreclosure proceedings against any assets constituting collateral for such obligations and exercise other rights and remedies available under the terms of our debt agreements. If our debt were to be accelerated, the Company may not have sufficient cash or be able to borrow sufficient funds to refinance the debt or sell sufficient assets to repay the debt, which could immediately adversely affect our business, cash flows, results of operations and financial condition.* Even if we were able to obtain new financing or negotiate amended terms with our existing lenders, such financing or amendments may not be on commercially reasonable terms or on terms that are acceptable to us.

104.    The press release concluded with a summary of Sonder's total cash and cash equivalents as of the end of the 2023 FY, stating:

As of December 31, 2023, the Company's total cash, cash equivalents and restricted cash was $136.5 million, of which $40.7 million was restricted, as compared to $207.2 million, of which $41.2 million was restricted, as of September 30, 2023. As communicated in prior disclosures, the Company has been executing on a number of

39

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

initiatives to improve its financial position, including reducing its corporate headcount by 38% since the first quarter of 2022, and engaging in a portfolio optimization program to improve the financial performance of the properties it operates. The Company is also exploring a number of additional opportunities to improve revenue by enhancing its distribution arrangements, further reduce its expenditures, and partner with current or alternative capital providers to improve its liquidity position, but can give no assurances that these alternatives will be successful. ***If these alternatives are not successful, the Company may not be able to continue ongoing operations or meet its obligations without favorable liquidity options or additional funding.***

105. That same day, March 15, 2023, the Company issued a Notification of Late Filing on Form 12b-25 with the SEC, stating, in relevant part:

Sonder Holdings Inc. (the "Company") is unable to file its Annual Report on Form 10-K for the year ended December 31, 2023 (the "Form 10-K") within the prescribed time period, without unreasonable effort or expense. As disclosed in the Company's Current Report on Form 8-K dated March 15, 2024, which is hereby incorporated by reference, on March 14, 2024, the Audit Committee of the Board of Directors of the Company determined, based on management's recommendation, that the Company's audited consolidated financial statements for the year ended December 31, 2022, and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the Securities and Exchange Commission in 2023, should no longer be relied upon due to accounting errors related to the valuation and impairment of operating lease right of use assets and related items. The Company intends to restate the affected financial statements to correct the errors and any other errors identified in the course of its review, as soon as practicable. The Company's management is also assessing the effect of these matters on the Company's internal control over financial reporting and its disclosure controls and procedures. The Company requires additional time to complete the foregoing restatements and control assessments and to finalize its fiscal year 2023 financial statements for inclusion in the Form 10-K. The Company does not expect to file the Form 10-K within the 15-day

40

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

extension period prescribed by Rule 12b-25 under the Securities Exchange Act of 1934, as amended.

The description above is preliminary and subject to change in connection with the Company's ongoing review and the completion of the anticipated restatements. Accordingly, there can be no assurance as to the timing of the filing of the Form 10-K or the results of the Company's ongoing review.

106.    On this news, the price of Sonders' stock fell $2.10 per share, or approximately 38.2%, from a close of $5.50 per share on March 17, 2024 to close at $3.40 per share on March 18, 2024.

***Developments Following the Relevant Period***

107.    On August 22, 2024, Sonder announced that its CFO, Deeksha Hebbar, would be resigning effective August 31, 2024.

108.    On September 27, 2024, Sonder filed its annual report for the 2023 FY on Form 10-K (the "2023 10-K"). The 2023 10-K discussed the revelations in the press release issued on March 15, 2024, stating:

As described in the Company's Current Report on Form 8-K filed with the SEC on March 15, 2024, on March 14, 2024, the Audit Committee (the "Audit Committee") of the Board of Directors of the Company determined, based on management's recommendation, that the Company's previously issued audited consolidated financial statements for the year ended December 31, 2022 (the "2022 Annual Financial Statements"), and the unaudited condensed consolidated financial statements included in each of the Company's quarterly reports on Form 10-Q filed with the SEC in 2023 (collectively with the 2022 Annual Financial Statements, the "Affected Financial Statements"), should no longer be relied upon.

Additionally, the Company determined any previously issued or filed reports, earnings releases, and investor presentations or other communications including or describing the Affected Financial Statements and related financial information covering the Affected Financial Statements should no longer be relied upon.

The Company has previously identified and reported material weaknesses in internal controls over financial reporting related to the

Company's leases, control activities and control environment. During the preparation of the Company's financial statements for the year ended December 31, 2023, the Company's management identified specific errors in the processes and procedures surrounding the Company's assessment of the valuation and impairment of its right-of-use ("ROU") lease assets and related items. Management identified a material weakness in its controls related to this matter, which is included in Part II, Item 9A of this Annual Report on Form 10-K.

**Restatement of Previously Issued Consolidated Financial Statements**

This Annual Report on Form 10-K for the year ended December 31, 2023 includes consolidated financial statements as of and for the years ended December 31, 2023, 2022 and 2021, as well as the relevant unaudited interim financial information for the quarterly periods in the years ended December 31, 2023 and 2022. The Company has restated certain information within this Annual Report on Form 10-K, including the consolidated financial statements as of and for the year ended December 31, 2022, and the relevant unaudited interim financial information for the quarterly periods in 2022 and 2023. In addition to the restatement errors described above, the Company has also corrected certain items that were previously identified and determined to be immaterial, individually and in the aggregate, to the consolidated financial statements for the year ended December 31, 2022 and the interim financial information for the quarterly periods in 2022 and 2023.

Additionally, the Company identified certain adjustments which were previously corrected out of period in the year ended December 31, 2022 but which related to activity occurring in the year ended December 31, 2021. In the context of its current restatement of the year ended December 31, 2022, the Company has also restated the year ended December 31, 2021 to reflect correction for these adjustments and has marked the impacted financial statements for the year ended December 31, 2021 as 'Restated' to highlight the correction of these immaterial errors. The Company considers its restatement to the year ended December 31, 2021 to be immaterial as defined in Accounting Standards Codification ("ASC") 250, Accounting Changes and Error Corrections, and related standards and interpretations.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

109.   On November 4, 2024, Sonders issued a press release on Form 8-K, which stated Defendant Bourgault would resign as Chief Financial Officer on December 2, 2024 and that its Chief Accounting Officer, Adam Bowen, would resign on December 31, 2024.

## DAMAGES TO SONDER

110.   As a direct and proximate result of the Individual Defendants' misconduct, Sonder has expended and will continue to expend many millions of dollars.

111.   Such expenditures include, but are not limited to:

 a. legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto;

 b. costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations; and

 c. the unjust compensation, benefits, and other payments to the Individual Defendants who breached their fiduciary duties to Sonder.

112.   As a direct and proximate result of the Individual Defendants' conduct, Sonder has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations and the Individual Defendants' breaches of fiduciary duties.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

113.   Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein.

114.   Plaintiff brings this action derivatively in the right of and for the benefit of Sonder to redress injuries suffered, and to be suffered, as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, violations of federal law, waste of corporate assets, and other wrongful conduct as alleged herein.

115.   Sonder is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

116.   Plaintiff is and has been a continuous shareholder of Sonder at all relevant times. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

117.   A pre-suit demand on the Board is futile and therefore excused because the current Company directors cannot exercise independent objective judgment about whether to bring or vigorously prosecute this action.

118.   At the time this suit was filed, the Board consisted of the following eight individuals: Defendants Davidson, Aggarwal, Banker, Frymire, van Paasschen, Sears, and non-parties Simon Turner and Erin Wallace (the "Director Defendants"). Plaintiff need only allege demand futility as to a majority, *i.e.* four, of the Director Defendants that were on the board at the time this action was filed.

119.   Demand is excused as to all of the Director Defendants because each of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or reckless to make and/or cause the Company to make false and misleading statements and omissions of material

fact, which renders the Director Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

120.   Demand is excused as to all of the Director Defendants because they solicited the false and misleading 2023 Proxy Statement to call for a shareholder vote to, *inter alia,* re-elect Defendants Frymire and Perez-Alvarado to the Board for a three-year term, allowing them to continue breaching their fiduciary duties to the Company.

121.   In abdication of their fiduciary duties, the Director Defendants either knowingly or recklessly caused or permitted Sonder to issue materially false and misleading statements. Specifically, the Director Defendants caused Sonder to issue false and misleading statements intended to make Sonder appear more profitable and attractive to investors. Moreover, the Director Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing breaches of their fiduciary duties, the Director Defendants face a substantial likelihood of liability, are not disinterested, and demand upon them is futile and thus, excused.

122.   Additionally, Defendant Davidson has served as a director and CEO of Sonder since founding the Company in January 2014. He previously served as the Chair of Company's Board until December 2024. The Company provides Defendant Davidson with his principal occupation, for which he receives substantial compensation. Thus, as the Company admits, he is a non-independent director. As the Company's highest officer and an influential member of the Board, Defendant Davidson signed the false and misleading 2022 10-K, as well as SOX certifications for the false and misleading statements made during the Relevant Period. Defendant Davidson also solicited the 2023 Proxy Statement, which re-elected Perez-Alvarado and Frymire to the Board for a three-year term, allowing them to continue breaching their fiduciary duties to the Company. As the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Company's highest officer, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. In addition, during the Relevant Period, he failed to correct the false and misleading statements alleged herein. Moreover, Defendant Davidson is named as a defendant in the Securities Class Action. For these reasons, Defendant Davidson breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

123.    Additionally, Defendant Aggarwal has served as a Company director since 2022. He serves as the Chair of the Nominating, Corporate Governance, and Social Responsibility Committee and as a member of the Compensation Committee. Defendant Aggarwal has received and continues to receive substantial compensation for his role as a director. As a Company director, Defendant Aggarwal also signed the false and misleading 2022 10-K. Defendant Aggarwal also solicited the 2023 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Perez-Alvarado and Frymire to the Board for a three-year term, allowing them to continue breaching their fiduciary duties to the Company. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons too, Defendant Aggarwal breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and therefore, excused.

124.    Additionally, Defendant Banker has served as a Company director

since January 2023. He serves as a member of the Investment Committee. Previously, he served as the Company's CFO from January 2019 until December 2022, and as the Company's President from September 2020 until December 2022. Thus, as the Company admits, he is not an independent director. Defendant Banker has received and continues to receive substantial compensation for his role as a director. As a Company director, Defendant Banker signed the false and misleading 2022 10-K. Defendant Banker also solicited the 2023 Proxy Statement, which contained false and misleading statements and contributed to the re- election of Defendants Perez-Alvarado and Frymire to the Board for a three-year term, allowing them to continue breaching their fiduciary duties to the Company. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons too, Defendant Banker breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and therefore, excused.

125.    Additionally, Defendant Frymire has served as a Company director since 2022. She serves as the Chair of the Investment Committee and as a member of the Nominating, Corporate Governance, and Social Responsibility Committee. Defendant Frymire previously served on the Audit Committee during the Relevant Period. Defendant Frymire has received and continues to receive handsome compensation for his role as a director. As a Company director, Defendant Frymire also signed the false and misleading 2022 10-K. Defendant Frymire also solicited the 2023 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendant Perez-Alvarado and herself to the Board for a three-year term, thereby allowing them to continue breaching their fiduciary

duties to the Company. As a trusted Company director, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Frymire breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and therefore, excused.

126. Additionally, Defendant Sears has served as a Company director since 2021, and as the Chairperson of the Board since January 2025. She serves as a Chair of the Audit Committee and as a member of the Compensation Committee. Previously, she served as the Lead Independent Director. Defendant Sears has received and continues to receive substantial compensation for her role as a director. As a Company director, Defendant Sears also signed the false and misleading 2022 10-K. Defendant Sears also solicited the 2023 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Perez-Alvarado and Frymire to the Board for a three-year term, thereby allowing them to continue breaching their fiduciary duties to the Company. As the trusted Company Chairperson, she conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded her duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. For these reasons, Defendant Sears breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and therefore, excused.

127. Additionally, Defendant van Paasschen has served as a Company director since 2020. He serves as a member of the Audit Committee and Investment Committee. Defendant van Paasschen has received and continues to receive

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

handsome compensation for his role as a director. As a Company director, Defendant van Paasschen also signed the false and misleading 2022 10-K. Defendant van Paasschen solicited the 2023 Proxy Statement, which contained false and misleading statements and contributed to the re-election of Defendants Perez-Alvarado and Frymire to the Board for a three-year term, thereby allowing them to continue breaching their fiduciary duties to the Company. As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. For these reasons too, Defendant van Paasschen breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and therefore, excused.

128. Additionally, Defendants Sears (as Chair), Frymire, and van Paasschen (collectively, the "Audit Committee Defendants") served as members of the Audit Committee at all relevant times. As such, they were responsible for the effectiveness of the Company's internal controls, the truth and accuracy of the Company's financial statements, and the Company's compliance with applicable laws and regulations. During the Relevant Period, they violated the Audit Committee Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty and violations of the Exchange Act; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and the Code of Conduct. Thus, the Audit Committee Defendants breached their fiduciary duties, are not independent or

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

disinterested, and thus demand is excused as to them.

129.   Additionally, in violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. In further violation of the Code of Conduct, the Director Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

130.   Sonder has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or any others who were responsible for that wrongful conduct to attempt to recover for Sonder any part of the damages Sonder suffered and will continue to suffer thereby. Thus, any demand upon the Director Defendants would be futile.

131.   The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

demand is excused as being futile.

132. The acts complained of herein constitute violations of fiduciary duties owed by Sonder's officers and directors, and these acts are incapable of ratification.

133. The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Sonder. If there is a directors' and officers' liability insurance policy covering the Director- Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as the "insured-versus-insured exclusion." As a result, if the Director-Defendants were to sue themselves or certain of the officers of Sonder, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

134. If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Sonder to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

135. Accordingly, each of the Director Defendants, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, therefore, excused.

# CLAIM I

## Against the Individual Defendants for Violations of
## Section 14(a) of the Exchange Act

136.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

137.   Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

138.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a- 9.

139.   Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears caused the 2023 Proxy Statement to be false and misleading by failing to disclose, *inter alia,* that Defendants knew and/or recklessly disregarded that Sonder had improperly accounted for the valuation and impairment of its operating lease ROU assets in its financial statements issued during the Relevant Period. As a result, the Company's statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

140.    Under the direction and watch of Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears, the 2023 Proxy Statement also failed to disclose, *inter alia,* that (1) the officers and directors violated the Code of Conduct either without waivers or without such waivers being disclosed despite the Company's claims of adherence to the Code of Conduct; and (2) the Board and its committees were not adequately exercising the Board's and its committees' risk oversight functions, contrary to the 2023 Proxy Statement's assertions, and were instead causing or permitting the Company to issue false and misleading statements.

141.    In the exercise of reasonable care, the Individual Defendants should have known that, by misrepresenting or failing to disclosure the foregoing material facts, the statements contained in the 2023 Proxy Statement were materially false and misleading. These misrepresentations and omissions were material to Plaintiff and other Sonder shareholders in voting on the matters set forth for shareholder determination in the 2023 Proxy Statement including, but not limited to, the reelection of the Company's directors.

142.    As a result of Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears causing the 2023 Proxy Statement to be false and misleading, Sonder shareholders voted, *inter alia,* to  (1) re-elect Defendants Perez-Alvarado and Frymire to the Board for a three-year terms; and (2) ratify the selection of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the 2023 FY.

143.    Sonder was damaged as a result of Defendants Davidson, Aggarwal, Banker, Frymire, Hyatt, Perez-Alvarado, van Paasschen, and Sears's material misrepresentations and omissions in the 2023 Proxy Statement.

144.    Plaintiff, on behalf of Sonder, has no adequate remedy at law.

## CLAIM II

### Against the Individual Defendants for Breach of Fiduciary Duties

145.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146.  Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Sonder's business and affairs.

147.  Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

148.  The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Sonder.

149.  In breach of their fiduciary duties owed to Sonder, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose that Defendants knew and/or recklessly disregarded that Sonder had improperly accounted for, *inter alia*, the valuation and impairment of its operating lease right of use ("ROU") assets. As a result, the Company's statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

150.  Moreover, the Individual Defendants failed to correct and/or cause the Company to fail to correct the false and/or misleading statements and/or materials of fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

151.   In breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain internal controls.

152.   The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Sonder's securities.

153.   The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

154.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

155. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Sonder has sustained and continues to

sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

156. Plaintiff on behalf of Sonder has no adequate remedy at law.

## CLAIM III

### Against the Individual Defendants for Unjust Enrichment

157. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

158. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Sonder.

159. The Individual Defendants either benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Sonder that was tied to the performance or artificially-inflated valuation of Sonder or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

160. Plaintiff, as a shareholder and a representative of Sonder, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

161. Plaintiff on behalf of Sonder has no adequate remedy at law.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## CLAIM IV

### Against the Individual Defendants for Waste of Corporate Assets

162. Plaintiff incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

163. The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of Sonder shareholders and the Company.

164. As a result of the foregoing, and by failing to consider the interests of the Company and its shareholders, the Individual Defendants have caused Sonder to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust Sonder and its products.

165. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

166. Plaintiff, on behalf of Sonder, has no adequate remedy at law.

## CLAIM V

### Against the Individual Defendants for Gross Mismanagement

167. Plaintiff incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

168. The Individual Defendants, by their actions alleged herein, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Sonder in a manner consistent with the operations of a publicly held corporation.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

169.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Sonder has sustained and will continue to sustain significant damages.

170.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

171.   Plaintiff, on behalf of Sonder, has no adequate remedy at law.

## CLAIM VI

### Against the Individual Defendants for Abuse of Control

172.   Plaintiff incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

173.   The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Sonder, for which they are legally responsible.

174.   As a direct and proximate result of the Individual Defendants' abuse of control, Sonder has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

175.   Plaintiff, on behalf of Sonder, has no adequate remedy at law.

## CLAIM VIII

### Against Defendants Davidson, Berry, and Bourgault for Contribution Under Sections 10(b) and 21D of the Exchange Act

176.   Plaintiff incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

177.   Sonder and Defendants Davidson, Berry, and Bourgault are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant Davidson's,

58

Defendant Berry's, and Defendant Bourgault's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

178.    Defendants Davidson, Berry, and Bourgault, because of their positions of control and authority as officers and/or directors of the Company, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

179.    Accordingly, Defendants Davidson, Berry, and Bourgault are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

180.    As such, Sonder is entitled to receive all appropriate contribution or indemnification from Defendants Davidson, Berry, and Bourgault.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Sonder and that Plaintiff is a proper and adequate representative of the Company;

B.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties so Sonder.

C.    Awarding to Sonder the amount of damages sustained by the Company as a result of the Individual Defendants' acts and transactions complained of herein, with pre-judgment and post-judgment interest thereon;

D.    Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

E.    Awarding Sonder restitution from Defendants, and each of them, and ordering  disgorgement of all profits, benefits and other compensation obtained by Defendants;

F.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 7, 2025            Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Elif Akcayli*

60

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

**<u>VERIFICATION</u>**

     I, Elif Akcayli, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

Dated: 3/5/2025

DocuSigned by:

CEEA866384F2486...

Elif Akcayli